# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| EDWARD MESSIER, | ) |
|     Petitioner, | ) |
| | )    Case No. 14-3164-CV-S-GAF-P |
| vs. | ) |
| TROY STEELE, | ) |
|     Respondent. | ) |

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

Petitioner, a convicted state prisoner currently confined at the Potosi Correctional Center in Mineral Point, Missouri, has filed *pro se* a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2007 conviction and sentence for first degree assault, which was entered in the Circuit Court of Greene County, Missouri. Petitioner's direct appeal of his conviction and sentence was denied. Respondent's Exhibit I. Petitioner filed a motion for post-conviction relief pursuant to Mo. Sup. Ct. R. 29.15, the denial of which was affirmed on appeal. *Messier v. State*, 398 S.W. 3d 508 (Mo. App. 2013). As a preliminary matter, respondent contends that, although petitioner states in his petition that he raises four grounds, he actually raised only three grounds for relief.

## Statute of Limitations

Respondent first contends that petitioner's petition should be dismissed as untimely because (1) direct review of petitioner's state conviction concluded on October 31, 2008; (2) petitioner waited until January 12, 2009 to file a post-conviction motion, which was concluded on February 22, 2013; and (3) petitioner mailed his federal petition on March 25, 2014, almost three (3) months after the one-year deadline for filing under 28 U.S.C. §2244(d)(1). Doc. No. 12, pp. 8-9. Respondent also argues that petitioner offers no medical records to support his claims that his medical condition justifies his

untimely petition and has asserted no facts that he has been pursuing his rights diligently. Doc. No. 12, pp. 9-10. In the alternative, respondent argues that petitioner's claims are without merit. Doc. No. 12, pp.10-23.

In reply, petitioner argues that his petition is within the one-year statute of limitations for federal habeas because he did not have access to his legal papers or his medical records and that he has seizures which make it hard for him to stand or sit for long periods of time. Doc. No. 16, p. 2. Because this case presents an example in which "it is considerably easier and thus more judicially efficient to affirm on the merits than to untangle the complexities of the timeliness issue," this Court will address the merits of petitioner's grounds for relief. *Jones v. Bowersox*, 28 Fed. Appx. 610, 611 2002 WL 215523, **1 (8th Cir. Feb. 13, 2002).

## Factual Background

In ruling on petitioner's motion for post-conviction relief, the Missouri Court of Appeals, Southern District, set forth the following facts:

> On the evening of April 10, 2006, Springfield Police Officer Chelsea Inlow responded to a Springfield motel to find Robert Nishimoto ("Victim") on a nearby sidewalk. The officer observed that Victim "was bloody. There was blood coming from his mouth, [and] blood coming from the back of his head." There was also a pool of blood beside Victim.
>
> Crystal Page testified that she had been with [petitioner], Jennifer Cass, and a couple of other people at a Springfield motel on April 10, 2006. Eventually she left with [petitioner] to "get some alcohol out of the car," and she saw Victim walking on the sidewalk. [Petitioner] said, "[H]old on a second[,]" before running to his truck and retrieving a black glove. [Petitioner] then punched Victim "in the head[,]" and Victim fell down on the sidewalk, hitting his head. [Petitioner] "ke[pt] on punching [Victim]" on the head and face "at least three or four" times. Page said "a bunch of people" ran out to see what was happening, and she realized at some point that [petitioner] had departed. When the police responded to the scene that night, Page falsely told them that she did not "know anything about what happened."
>
> Cass recalled that [petitioner] and Page left the motel room "to go get the liquor [,]" and after "awhile" she went to look for them. When she opened the door to go outside, "[petitioner] was standing at the door." [Petitioner] "said he had to beat this guy up."

2

Cass looked around the door and saw "a guy laying [sic] on the ground." Cass began "cussing" at [petitioner] and told him to leave. Cass admitted that she was awaiting sentencing on an assault case of her own and hoped to receive a favorable sentence after giving her testimony in [petitioner's] case.

Springfield Police Detective Daron Wilkins interviewed [petitioner] on April 11, 2006. He advised [petitioner] of his *Miranda*[FN3] rights and noticed that [petitioner] signed the rights-notice form with his left hand. Detective Wilkins noticed that [petitioner's] "left hand was swollen[,]" and showed "some bruising[.]" He photographed [petitioner's] hand after the interview, and two of the photos were admitted into evidence. A video recording of the interview was made, and portions of it were played for the jury from State's Exhibit 14.[FN4] The following day, Detective Wilkins recovered a pair of black gloves from Ms. Evans. The detective did not observe blood on the gloves, but he was not surprised based upon his experience with fighting.

FN3. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

FN4. The videotape has not been deposited with the Court, but both parties' briefs indicate that during the interview [petitioner] said he saw other men beating Victim, and he helped Victim stand up.

Dr. Steven Quinn, "an oral and maxillofacial surgeon," treated Victim and discovered that he had suffered a fracture to the bone around the eye socket and "lots of fractures" to the maxillary bone. In lay terms, the maxillary bone was "smashed[.]" Dr. Quinn said the maxillary injury could have been caused by an object or a "forceful punch" to the cheekbone. He said that if a person was upright the face could "recoil." Victim's injuries would more easily have resulted from being punched while lying down on concrete, such as on a sidewalk. The doctor said that Victim may not have bled "instantaneously [.]" He performed surgery on Victim to reposition some bone, and he screwed a titanium plate across "the zygomatic arch" in Victim's skull to stabilize it for healing purposes. Without the surgery, Victim could have experienced "major interference with [his] ability to work [his] lower jaw." Additionally, unless the bones were correctly positioned, the muscles around the eye could have been "abnormally pull[ed.]" Without treatment of the depressed area and reinforcement of the cheekbone, Victim's face would have looked different, with "a flattening of th[e] whole area of the cheek."

[Petitioner] did not testify. Victim did not recall how he suffered his injuries. Victim recalled waking up in the hospital "like three or four days afterwards." He testified that he still suffered "drooping of [his] face [,]" which would also "go numb on [the] right side."

*Messier v. State*, 398 S.W. 3d at 510-511.

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. *Marshall v. Lonberger*, 459 U.S. 422, 432

3

(1983). Credibility determinations are left for the state court to decide. *Graham v. Solem*, 728 F.2d 1533, 1540 (8th Cir. en banc), *cert. denied*, 469 U.S. 842 (1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[1] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

### Ground One – Denial of a Continuance

In Ground One, petitioner contends that the trial court erred by denying his request for a continuance on the morning of the trial based on the State's disclosure of Dr. Steven Quinn as an expert witness thirteen days earlier. Doc. No. 1, pp. 5-6, 19, and 21. In ruling on this claim on direct appeal, the state appellate court held:

> This appeal stems from the State's endorsement of Dr. Quinn, less than two weeks before trial, to testify about the nature and extent of the victim's injuries; how those could have occurred; and Dr. Quinn's surgery thereon. Defense counsel interviewed Dr. Quinn a week before trial, then sought a continuance to pursue medical evidence that prior injuries/surgeries to [petitioner's] left hand[FN2] meant he could not have hit the victim that hard – evidence that [petitioner] claims could have "nullified Dr. Quinn's testimony and led to his acquittal."
>
> FN2. The State's theory was that [petitioner], who is left-handed, repeatedly beat the victim with his left fist.
>
> [Petitioner] has not shown the trial court abused its discretion by refusing a continuance. In June 2006, the State filed its information charging [petitioner] with first-degree assault, and disclosed Dr. Quinn and his medical records regarding the victim's injuries and treatment. [Petitioner] does not claim, and we find no suggestion of, a material variance between Dr. Quinn's records and his eventual testimony. Thus, although Dr. Quinn was not formally endorsed until later, [petitioner] had known about him for months and had his medical records for nearly as long as the felony information had been filed. Throughout the same pretrial period, there also seemingly was no real

---

[1] In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

4

question about the victim's injuries; no secret that "serious physical injury" was an element of the charge; no dispute that the defense knew about [petitioner's] alleged left-hand problems; and no real reason [petitioner] could not have sought to earlier depose or interview Dr. Quinn. [Petitioner] simply has not made the "very strong showing" needed to convict the trial court of abusing its discretion. *Compare, e.g., State v. Christeson*, 50 S.W. 3d 251, 261-62 (Mo. banc. 2001); [*State v.*] *Deason*, 240 S.W. 3d [767,] 771-72 [(Mo. App. 2007)]; *State v. Lucas*, 218 S.W. 3d 626, 629-30 (Mo. App. 2007); *State v. Hibler*, 21 S.W. 3d 87, 92-94 (Mo. App. 2000); [*State v.*] *Downen*, 3 S. W. 3d [434,] 438 [(Mo. App. 1999)].

Nor has [petitioner] carried his burden as to prejudice. The State's witnesses included an acquaintance of [petitioner's] who watched him attack and beat the victim. A second acquaintance testified that [petitioner] told her he had just "beat this guy up." This witness then looked outside; saw the victim lying on the ground; checked on him and found he "wasn't moving, just laying there ;" got angry with [petitioner]; started cussing him; told him to leave; and asked someone to call 911. This direct testimony, coupled with [petitioner's] lies to police about his identity and other inculpative evidence, belies [petitioner's] bald assertion that given more time, he could have found medical evidence that "would have . . . led to his acquittal."

Respondent's Exhibit I, pp. 3-4(footnote 1 omitted).

Initially, any claim by petitioner that the state violated Missouri's disclosure or discovery rules is a question of state law, which cannot be re-examined by this Court in federal habeas corpus. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id*. at 68.

In *Ungar v. Sarafite*, 376 U.S. 575 (1964), the United States Supreme Court set forth the standard governing an accused's constitutional right to a continuance: "[t]he matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process." *Id*. at 589. "There are no mechanical tests for deciding when a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances . . . , particularly in the reasons presented to the trial judge at the time the request is denied." *Id*.

5

As respondent argues in his response, petitioner failed to demonstrate that the denial of the motion for a continuance was an abuse of discretion by the trial court because the state had complied with Mo. Sup. Ct. R. 25.03 by disclosing the victim's medical records, including Dr. Quinn's reports, and by notifying petitioner's trial counsel of their intent to call Dr. Quinn as a witness. Thus, trial counsel had adequate time to investigate and prepare to respond to whatever opinions Dr. Quinn might have, and trial counsel failed to demonstrate a valid reason for failing to conduct his own investigation in response thereto. Moreover, petitioner's claim that a theoretical witness existed to contradict Dr. Quinn's theory that the most significant injury occurred after the victim was on the ground was pure speculation as shown by petitioner's failure to produce such a witness at either his motion for new trial or his post-conviction motion hearing.[2] Doc. No. 12, p. 18. Given that Ms. Cass testified that she did not see the actual assault but rather that petitioner confessed to her that he hit the victim, any such witness testifying that petitioner was physically incapable of causing the victim's injuries would not have undermined Ms. Cass's testimony in any event. *Id*.

In *Middleton v. Roper*, 498 F. 3d 812, 815-17 (8th Cir. 2007), moreover, the United States Court of Appeals for the Eighth Circuit upheld the denial of habeas relief where the trial court denied a request for a continuance even though the government disclosed evidence ten days before trial. The Eighth Circuit reasoned that the state court's finding that petitioner had not been prejudiced or deprived of due process because defense counsel already had information about the witnesses through previous hearings or police reports was not an unreasonable application of Supreme Court precedent.

Based on the above discussion, the state courts' rulings were not "contrary to, or [did not involve] an unreasonable application of, clearly established Federal Law, as determined by the Supreme

---

[2] Even if petitioner were to attempt to raise a claim that counsel was ineffective for failing to present evidence contradicting Dr. Quinn, he failed to raise such a claim on appeal from denial of his post-conviction motion, so it would be procedurally barred from federal habeas corpus review.

Court of the United States" or did not result "in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(1) and (2). Ground One will be denied.

## Grounds Two and Three – Failure to Instruct on Lesser-Included Offenses

In Ground Two, petitioner contends that appellate counsel was ineffective for failing to brief the issue of whether the trial court should have instructed the jury on the lesser-included offense of assault in the third degree based on recklessly causing physical injury. In Ground Three, petitioner raises the failure of appellate counsel to brief the trial court's failure to instruct on assault in the third degree by recklessly creating a grave risk of serious physical injury. Doc. No. 1, pp. 6-9, 18, and 20.

The trial court instructed the jury on the charged offense of assault in the first degree (knowingly causing serious physical injury) and the lesser-included offense of assault in the second degree (based on the theory that petitioner "recklessly caused serious physical injury to [Victim] by striking him in the head with his fist[.]" *Messier v. State*, 398 S.W. 3d at 511-512. The trial court refused to give the instructions marked A and B, and the jury convicted petitioner of first-degree assault. *Id*. at 512.

Although petitioner raised his claims that the trial court committed prejudicial error in not allowing petitioner's Instructions A and B on the lesser-included offenses of third-degree assault in his motion for new trial, the claims were not raised on direct appeal. Rather, petitioner raised claims in his Rule 29.15 post-conviction motion that direct appeal counsel was ineffective for failing to raise the trial court's failure to instruct on third-degree assault. Petitioner's appellate counsel did not testify in person at the Rule 29.15 evidentiary hearing, but post-conviction counsel offered appellate counsel's testimony in the form of an affidavit (Exhibit 1). Appellate counsel stated in his affidavit that he did not raise such claims because he did not believe that there was any evidence to support a conviction for third-degree assault and, therefore, did not feel that it was a meritorious claim. *Messier v. State*, 398 S.W. 3d at 512.

7

In denying these claims on appeal from denial of post-conviction relief, the Missouri Court of Appeals, Southern District, held:

> Assuming, *arguendo*, that the evidence presented at [petitioner's] trial would have supported a claim that the trial court erred in rejecting [petitioner's] proffered instructions, [] [petitioner] cannot prevail because "[t]he failure to give a different lesser-included offense instruction is neither erroneous nor prejudicial when instructions for the greater offense and *one* lesser-included offense are given and the defendant is found guilty of the greater offense." *[State v.] Johnson*, 284 S.W. 3d [561] at 575 [Mo. banc 2009) (emphasis added in original); *see also State v. Johnston,* 957 S.W. 2d 734, 751-52 (Mo. banc 1997) (where defendant was convicted "of the greater of the two instructed crimes, he could not have been prejudiced by the refusal to give an instruction on yet another lesser crime").
>
> Here, a verdict director for the lesser-included offense of assault in the second degree based on [petitioner's] having "recklessly caused serious physical injury to [Victim] by striking him in the head with his fist" was given, but the jury nonetheless found [petitioner] guilty of first-degree assault. [Petitioner] could not have been prejudiced by the trial court's failure to instruct on the other lesser-included crimes. *See Johnson*, 284 S.W. 3d at 575; *Johnston*, 957 S.W. 2d at 751-52.
>
> The claims that [petitioner] asserts his appellate counsel should have raised in his direct appeal would not have required a reversal of [petitioner's] conviction if they had been made. As a result, appellate counsel was not ineffective for failing to assert them. *See Moss[v. State]*, 10 S.W. 3d [508] at 514 [Mo. banc 2000)]. [Petitioner's points are denied, and the motion court's order denying post-conviction relief is affirmed.

*Messier v. State*, 398 S.W. 3d at 513.

In reviewing a claim of ineffective assistance of direct appellate counsel, "a court must apply the familiar test enunciated in *Strickland v. Washington*,[466 U.S. 668, 687 (1984)]." *Boliek v. Bowersox*, 96 F.3d 1070, 1073 (8th Cir. 1996). The failure of appellate counsel to brief every possible issue on appeal does not render direct appellate counsel ineffective. *Whitmill v. Armontrout*, 42 F.3d 1154, 1156 (8th Cir. 1994), *cert. denied*, 516 U.S. 896 (1995). The process of "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986)(quoting *Jones v.*

*Barnes*, 463 U.S. 745, 751-52 (1983)). Direct appeal counsel is not ineffective for failing to raise a meritless issue. *Grubbs v. Delo*, 948 F.2d 1459, 1464 (8th Cir. 1991), *cert. denied*, 506 U.S. 835 (1992).

Jury instructions involve questions of state law, and a federal court is not to "reexamine state-court determinations on state-law questions." *Lupien v. Clarke*, 403 F.3d 615, 619 (8th Cir. 2005) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)). Both the Rule 29.15 motion court and the Missouri Court of Appeals, Southern District, found that there was no prejudice to petitioner from the trial court's refusal to give the two additional lesser-included offense instructions because the jury already had been given one lesser-included offense instruction and chose to convict petitioner of first-degree assault in any event.

Moreover, "[t]he United States Supreme Court has never held that due process requires the giving of lesser-included-offense instructions in noncapital cases." *Dickerson v. Dormire*, 2 Fed. Appx. 695, 696, 2001 WL 266967, **1 (8th Cir. Mar. 20, 2001). Consequently, the United States Court of Appeals for the Eighth Circuit "has consistently held that 'the failure to give a lesser included offense instruction in a noncapital case rarely, if ever, presents a constitutional question.'" *Id*. (quoting *Pitts v. Lockhart*, 911 F.2d 109, 112 (8th Cir. 1990), *cert. denied*, 501 U.S. 1253 (1991)).

Because petitioner cannot show that there is a reasonable probability that, but for direct appeal counsel's failure to raise trial court error as to the two proffered instructions, the result of his direct appeal would have been different, petitioner has failed to demonstrate that direct appeal counsel was constitutionally ineffective. Grounds Two and Three will be denied in that the state court determinations did not involve an unreasonable determination of the facts in light of the evidence or an unreasonable application of federal law as determined by the United States Supreme Court under Section 2254 (d).

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a

petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. *See* 28 U.S.C. § 2254, Rule 11(a).

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus is denied, and this case is dismissed with prejudice.

/s/ Gary A. Fenner
GARY A. FENNER
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated: October 1, 2014.